UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
FIRST HORIZON BANK, a division of
First Tennessee Bank,

                Plaintiff,

      -against-

CATHY MORIARITY-GENTILE *a.k.a.*
CATHERINE MORIARTY,

                Defendant.
----------------------------------X

**MEMORANDUM AND ORDER**

10-CV-289 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

On November 30, 2012, the court held a traverse hearing in order to assess whether defendant Cathy Moriarty-Gentile ("defendant") was properly served with process by plaintiff First Horizon Bank ("plaintiff"). For the reasons discussed below, the court finds that plaintiff has proven the adequacy of service of process on defendant by a preponderance of the evidence, and therefore directs that judgment be entered in favor of plaintiff in the amount of $734,563.48, with an additional $131.13 per day accruing from the date of Judge Reyes' Report and Recommendation, August 17, 2012, through the entry of final judgment.

**BACKGROUND**

On January 22, 2010, plaintiff commenced the instant action against defendant, alleging that defendant breached an agreement for a home equity line of credit by failing to pay

certain amounts due to plaintiff.  (*See* ECF No. 1, Compl. ¶¶ 5-9.)  Over the course of almost the next two years, plaintiff unsuccessfully attempted to serve defendant with process in California and New York and obtain a judgment.  (*See generally* ECF Nos. 1-22.)  Eventually, on May 20, 2011, defendant filed a letter with the court indicating that she was available to accept service of process at her residence at 11 Capel Drive, Dix Hills, New York 11746 ("Dix Hills residence").  (ECF No. 20, Ltr. ¶ 3.)  Accordingly, on June 7, 2011, the court ordered plaintiff to personally serve defendant at her Dix Hills residence, and that defendant "cooperate with plaintiff's counsel to accept service."  (Order of June 7, 2011.)  On September 7, 2011, plaintiff filed an affidavit of service indicating that defendant was personally served at her Dix Hills residence at 12:55 PM on August 25, 2011.  (ECF No. 23, Summons Returned.)  After defendant failed to answer or otherwise respond to the complaint, plaintiff filed a request for a Certificate of Default on January 10, 2012.  (ECF No. 24, Request for Cert. of Default.)  On January 10, 2012, the Clerk of Court noted defendant's default pursuant to Federal Rule of Civil Procedure 55(a).  (*See* ECF No. 25, Clerk's Certificate.)  Plaintiff subsequently filed a motion for default judgment on February 17, 2012.  (ECF No. 26, Second Mot. for Def. J.)

On April 2, 2012, plaintiff's motion for default judgment was referred to Magistrate Judge Ramon E. Reyes Jr. for a Report and Recommendation.  (*See* Order Referring Mot.)  Magistrate Judge Reyes issued a Report and Recommendation on August 17, 2012, in which he recommended that the court grant plaintiff's motion and enter default judgment against defendant in the amount of $734,563.48 in contract damages, with an additional $131.13 per day accruing from the date of the Report and Recommendation through the entry of final judgment.  (*See* ECF No. 33, R&R at 12.)  The Report and Recommendation was served on defendant and advised her of her time to file objections.  (*See* ECF No. 34, Aff. of Service; R&R at 12.)

On September 7, 2012, defendant, then *pro se*, submitted a letter to the court objecting to Judge Reyes' Report and Recommendation, claiming that she was never served with the summons and complaint.  (*See* ECF No. 35, Objection Ltr.)

On September 27, 2012, the court adopted Magistrate Judge Reyes's Report and Recommendation and granted plaintiff's motion for default judgment, without prejudice to defendant's right to contest service, which is the sole remaining issue in this case.  The court additionally ordered that defendant had until October 29, 2012 to obtain counsel and submit a sworn or affirmed denial of receipt of service under penalty of perjury with specific facts to rebut the statements made in process

server Murray Browne's ("Browne") affidavit of service. (*See* ECF No. 41, Order Adopting R&R.) On October 27, 2012, defendant timely filed a sworn affidavit via counsel, in which she denied the facts sworn to by Browne. (*See* ECF No. 44, Aff./Decl.) Therefore, on November 6, 2012, the court scheduled a traverse hearing for November 30, 2012. (Scheduling Order of Nov. 6, 2012.) The hearing took place as scheduled on November 30, 2012, at which time the court heard testimony from five witnesses, including defendant, regarding the sufficiency of plaintiff's alleged service on defendant. (*See* Minute Entry of Nov. 30, 2012.) The court reserved decision. (*Id.*)

## **DISCUSSION**

### I. Challenging Service of Process

When considering a challenge to personal jurisdiction or service of process, the burden is on the plaintiff "to prove both the adequacy of service and that the court has personal jurisdiction over the defendant." *George v. New York City Health & Hosps. Corp.*, No. 09-CV-3833, 2012 U.S. Dist. LEXIS 44125, at *3-4 (E.D.N.Y. Mar. 23, 2012) (citing *Mende v. Milestone Tech. Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)); *see also US Flour Corp. v. Certified Bakery, Inc.*, No. 10-CV-2522, 2012 U.S. Dist. LEXIS 29896, at *7-9 (E.D.N.Y. Mar. 5, 2012) (plaintiff has the burden of proving proper service by a preponderance of the evidence); Fed. R. Civ. P. 12(b)(5).

4

"Where factual questions arise as to the propriety of service, a traverse hearing must be held to determine if service was, in fact, proper." *George*, 2012 U.S. Dist. LEXIS 44125, at *4 (citing *Old Republic Ins. Co. v. Pac. Fin. Srvcs. of Am., Inc.*, 301 F.3d 54, 57-58 (2d Cir. 2002)). Specifically, "[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Old Republic*, 301 F.3d at 57.

**II. The Traverse Hearing**

The court first heard testimony from Browne, a process server with AAA Attorney Service Company of New York who credibly testified to having personally served defendant with plaintiff's summons and complaint on the afternoon of August 25, 2011 at defendant's Dix Hills residence. (*See* ECF No. 23, Summons Returned; Tr. of Traverse Hearing ("Tr.") at 4-5.) Browne, who has been a process server for thirty-one years, testified to having served defendant with process at her home at 11 Capel Drive in Dix Hills, New York. (*See* Tr. at 4-6.) According to Browne, he had a photograph of the defendant and the summons and complaint when he arrived at defendant's Dix Hills residence. (*See* Tr. at 7-9.) Browne testified that defendant initially denied that she was Cathy Moriarty-Gentile before "unequivocally" admitting her identity. (Tr. at 13.)

5

Browne then recalled in detail conversing with defendant for approximately eight to fifteen minutes at her front door about her film and television acting career, including her role in *Raging Bull*. (*See* Tr. at 12-14.) Browne also testified that a female friend of his had accompanied him that day and waited in his car while he served and then chatted with defendant. (*See* Tr. at 13.) Lastly, Browne's recollection of the appearance of the Dix Hills residence was consistent with defendant's own description of the property. (*Compare* Tr. at 70 (defendant describing a red house on a hill in need of maintenance) *with* Tr. at 83-84 (Browne describing a red house on a hill that was "run down.").)

The court next heard credible testimony from Mary Lou Nolan ("Nolan"), Browne's companion who, according to Browne, had waited in Browne's car while he served defendant. Nolan testified that she recalled accompanying Browne and waiting in his car while he served defendant at the Dix Hills residence because defendant's celebrity status was "something that was pertinent that I could remember." (Tr. at 29.) Nolan also testified that from the car she could see Browne standing at the house's door while he spoke to a woman inside the house for "longer than usual." (Tr. at 30.) Nolan also testified that when Browne returned to the car he no longer possessed the

6

service papers which he had in his possession when he left the car to serve defendant. (Tr. at 31.)

The court then heard testimony from defendant that was evasive, rambling, and not credible. Just as she did in her September 7, 2012 letter, defendant denied having ever met or been served with the summons and complaint by Browne. (*See, e.g.*, Tr. at 40, 67.) Defendant also denied having ever seen Judge Reyes' Report and Recommendation before. (Tr. at 42.) Contrary to Browne and Nolan's testimony, defendant testified that she was not present at her Dix Hills residence on August 25, 2011; rather, defendant claimed that on that day she was at her beach house at 88 Fantasy Drive in Flanders, New York ("Flanders residence"), where she and her family had been for most of that summer. (*See* Tr. at 47-49.) Defendant, however, did not articulate a reason why, unlike her October 27, 2012 affidavit, her September 7, 2012 letter did not mention having been at her Flanders residence in August of 2011. (*See* Tr. at 47-52.) Defendant was also evasive before admitting that she had never previously informed the court that she could be served at any location other than the Dix Hill address that she offered in her May 20, 2011 letter to the court. (*See* Tr. at 53-55, 60-62.) Defendant also admitted that she told the court in May of 2011 that she could be served at her Dix Hills residence while intending, according to her October 2012 affidavit, to be at her

7

Flanders residence from June through October of 2011. (Tr. at 62.) Importantly, defendant conceded that during the time her family primarily resided at her Flanders residence, she would, on occasion, return to her Dix Hills residence. (*See* Tr. at 62-65.) Defendant, however, insisted that she was "definitely not" at her Dix Hills residence on August 25, 2011. (Tr. at 65.) Defendant also denied that had she ever stood at her open door at her Dix Hills residence chatting with Browne, because her five dogs would have attempted to run out and bite him. (*See* Tr. at 72-73.)

The fourth witness was defendant's friend Ana Thompson ("Thompson"). (*See* Tr. at 75.) Thompson testified that she and her children live near defendant's Flanders residence, and that they would visit defendant's home roughly once a week during the summer of 2011. (*See* Tr. at 75, 77.) Thompson also testified that she and her children had spent time with defendant in the Flanders area during the last two weeks of August 2011, but that she could not specifically recall whether her family had spent time with defendant's family on August 25th. (*See* Tr. at 79-80.) Thompson said that she specifically recalls having spent time with defendant during this period because Thompson's mother, who was visiting from out of town at the same time, had also spent time with defendant. (*See* Tr. at 80.) Thompson admitted on cross-examination that she was not with defendant

the entire two weeks in August, and could not say whether defendant ever left the Flanders area. (*See id.*)

The fifth and final witness was defendant's friend and hairstylist Linda Rodriguez ("Rodriguez"). (*See* Tr. at 88-89.) Rodriguez testified that she and her children spent "most" of the month of August 2011, including nights, at defendant's Flanders residence. (*See* Tr. at 91.) Rodriguez also testified that during this time defendant never left her Flanders residence to spend time at her Dix Hills residence. (Tr. at 91-92.) She also specifically claimed that defendant was at her Flanders residence on August 25, 2011. (*See* Tr. at 92.)

### III. The Court's Credibility Determination

The court finds Browne's detailed recollection of personally serving defendant to be entirely consistent and credible. Browne, who has no personal stake in the instant litigation, convincingly recounted details about his conversation with defendant, her appearance, and the appearance of her Dix Hills residence, which convince the court that Browne did, in fact, effectuate personal service of the summons and complaint on defendant on August 25, 2011. (*See, e.g.*, Tr. at 23 (testifying on cross-examination about having discussed with defendant her inability to pay her obligation to plaintiff due to her dearth of acting work); Tr. at 83-84 (accurately describing the physical condition of defendant's home).)

9

Further, Browne's testimony was corroborated by Nolan's equally disinterested and specific testimony.

In contrast, defendant's testimony was often evasive, imprecise, and inconsistent with prior statements made by her to the court. In short, the court does not credit defendant's claim that she was not, in fact, personally served with process by Browne. Furthermore, neither Thompson nor Rodriguez's testimony corroborated defendant's claim. Thompson's testimony about having spent some amount of time with defendant in Flanders during the last two weeks of August 2011 in no way precludes defendant from having been at her Dix Hills residence on the afternoon of August 25, 2011. Rodriguez claims to have lived at defendant's Flanders residence for all of August 2011, and testified that she and defendant were together "every day" during that time. (Tr. at 92.) However, Rodriguez testified that she did not know for certain whether defendant ever returned to her Dix Hills residence during that period. (*Id.*) At no point in her testimony did Rodriguez state that she and defendant spent time with Thompson and her visiting mother. Thus, the court finds that Rodriguez, a close friend and stylist of defendant, was an interested witness whose testimony cannot be fully credited.

Consequently, the court finds that Browne's detailed testimony about having personally served and spoken with

defendant satisfies plaintiff's burden of proving proper service by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, the court finds that plaintiff has proven the adequacy of service of process on defendant by a preponderance of the evidence.  Accordingly, for the reasons set forth in Magistrate Judge Reyes' August 17, 2012 Report and Recommendation, the court grants plaintiff's motion for default judgment and orders that judgment be entered in favor of plaintiff in the amount of $734,563.48, with an additional $131.13 per day accruing from the date of the Report and Recommendation, August 17, 2012, through the entry of final judgment.  The Clerk of Court is respectfully requested to enter judgment in accordance with this order and to close this case.

**SO ORDERED.**

Dated:     February 20, 2013
           Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge
Eastern District of New York