UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
FIRST HORIZON BANK, a division of
First Tennessee Bank,

          Plaintiff,

     -against-

CATHY MORIARTY-GENTILE *a/k/a.*
CATHERINE MORIARTY,

          Defendant.
---------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

10-CV-00289 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

On August 19, 2014, plaintiff First Horizon Bank
("plaintiff") filed an application for an order to show cause
for third-party Hey Pizza Lady Productions, Inc. ("HPLP"), a
California corporation, to appear before this court and show
cause why an order should not be entered pursuant to Federal
Rule of Civil Procedure 69(a) ("Rule 69(a)") and New York Civil
Practice Law and Rule § 5225(b) ("CPLR § 5225(b)") to impose the
liability of the full judgment amount entered against defendant
Cathy Moriarty-Gentile a/k/a Catherine Moriarty ("defendant" or
"Ms. Moriarty") against HPLP. (Unsigned Order to Show Cause,
ECF 64.) On August 22, 2014, the court granted plaintiff's
application for an order to show cause. (Order to Show Cause,
ECF No. 66.) Pursuant to the parties' stipulation dated August
27, 2014, the court extended the briefing schedule for the

motion to hold HPLP liable under an alter ego theory of liability pursuant to Rule 69(a) and CPLR § 5225(b). (*See* Stipulation, ECF No. 69; Order re Stipulation, dated 8/27/14.) For the reasons stated below, plaintiff's motion is granted.

## I. Background[1]

On February 21, 2013, the Clerk of Court entered judgment against defendant after granting plaintiff's motion for default judgment for defendant's breach of an agreement for a home equity line of credit. (Clerk's J., ECF No. 48.) The parties engaged in substantial post-judgment discovery pursuant to Rule 69, and plaintiff now seeks to hold HPLP liable under an alter ego theory of liability.

Defendant is a professional actress who currently resides in Dix Hills, New York. (Aff. of Daniel A. Fass ("Fass Aff.") Exh. B (Deposition of Cathy Moriarty-Gentile ("Moriarty Dep.")) at 4, 16, ECF No. 66-3.) Defendant is the sole shareholder of HPLP, a California loan-out corporation that she formed on August 27, 1993. (*Id.* at 23; Fass Aff. Exh. C (Deposition of Jackie Keehn ("Keehn Dep.")) at 17-18, ECF No. 66-4.) A loan-out corporation is a legal entity that loans out the services of an entertainer to a third party. (Fass Aff.

---

[1] The court assumes familiarity with the procedural history and factual background of the case, which is summarized in numerous orders, including the court's order denying defendant's motion for reconsideration dated December 4, 2013. (ECF No. 61.) Consequently, the court limits its factual summary to those facts pertinent to evaluating plaintiff's motion to hold HPLP liable pursuant to Rule 69(a) and CPLR § 5225(b).

Exh. C (Keehn Dep.) at 16; Aff. in Opp. of Chris Cardillo ("Cardillo Aff.") Exh. D at 3, ECF No. 86-3.) Loan-out corporations are used by entertainers to loan out their services and serve as a conduit through which income and expenses are run for the entertainer. (Fass Aff. Exh. C (Keehn Dep.) at 16.) Here, defendant is the sole shareholder and an employee of HPLP, and HPLP loans out her acting services to production companies. (*Id.*; Fass Aff. Exh. B (Moriarty Dep.) at 23.) Defendant, however, testified at her deposition that she did not receive a salary from HPLP, because the company "doesn't make any money." (Fass Aff. Exh. B (Moriarty Dep.) at 24.)

Defendant retained Ms. Jackie Keehn, a certified public accountant (CPA), to act as the business manager and/or bookkeeper for HPLP. (Fass Aff. Exh. C at 19; Aff. in Opp. of Catherine Moriarty ("Moriarty Aff.") ¶ 7, ECF No. 73.) Ms. Keehn clarified that the bookkeeping services she provides to defendant are called "business management" services in her industry. (Fass Aff. Exh. C (Keehn Dep.) at 8, 19-20.) HPLP's corporate office is located at Ms. Keehn's office in Sherman Oaks, California. (Moriarty Aff. at ¶ 14.) Ms. Keehn's bookkeeping a.k.a. business management services include depositing checks from third parties, paying corporate bills, maintaining the ledger, reconciling bank accounts and filing tax returns. (Fass Aff. Exh. C (Keehn Dep.) at 19.) Defendant

avers, via affidavit, that Ms. Keehn "has been entrusted with all of HPLP's business affairs and directs and performs all of its operations" and that "[a]ll books records and transactions are performed by Keehn and are in her, and her staff's exclusive care custody and control." (Moriarty Aff. ¶¶ 18, 24.)  Ms. Keehn testified at her deposition, however, that defendant directs her to make payments and transfer money to defendant's personal account and that she would not transfer money except at defendant's request. (*See* Fass Aff. Exh. C (Keehn Dep.) at 53-54, 71, 80-81.)

HPLP has a business bank account at First Republic Bank and a pension account at Morgan Stanley. (*Id*. at 29-30.) Ms. Keehn testified that she did not receive the monthly statements for the Morgan Stanley pension account. (*Id*.)  In her affidavit, defendant swears that Ms. Keehn is a co-signor with her on HPLP's bank account and has "unilaterally decided to open, close and change HPLP's bank accounts without [her] prior knowledge or consent" and that "all banking services are performed by Keehn at Keehn's discretion."  (Moriarty Aff. ¶ 19.)  Ms. Keehn testified that the HPLP bank account constitutes an asset of Ms. Moriarty's. (Fass Aff. Exh. C (Keehn Dep.) at 35.)

At her deposition, defendant testified that any documents in her possession relating to HPLP were destroyed by

Hurricane Sandy, and that Ms. Keehn would be in possession of any other documents relating to HPLP that were not destroyed. (Fass Aff. Exh. B (Moriarty Dep.) at 6, 52-53.)  In her affidavit, defendant averred that "[a]ll books records transactions are performed by Keehn and are in her, and her staff's, exclusive care custody and control."  (Moriarty Aff. ¶ 23.)

HPLP's federal tax returns from 2008 to 2012 show that, in every single year during this period, HPLP did not have gross sales in excess of $51,000, HPLP did not report any compensation of officers nor any payment of salaries and wages, and HPLP did not have any taxable income.  (Fass Aff. ¶ 26; *see* Fass Aff. Exh. K.)  The HPLP 2009 tax return showed a distribution of $218,000 on the K-1 Form; however, Ms. Keehn did not know if defendant received distributions in excess of that amount.  (Fass Aff. Exh. C at 66.)

Bank records for the HPLP business checking account for the period from July 2012 to December 2013 show that defendant withdrew $43,803.00 from the HPLP business account via ATM locations in New York.  (Fass Aff. ¶¶ 22-23, ECF No. 66; *see* Fass Aff. Exh. J; Fass Aff. Exh C (Keehn Dep.) at 80-81.) HPLP's bank records also show that cash transfers from the HPLP business account to defendant's personal account totaled $79,611.00 and that the HPLP business account was used to pay

defendant's personal cable television bill which totaled
$2,026.00 between July 2012 and December 2013.  (*Id.*)  In
February 2013, the HPLP business account also paid for
defendant's membership in the AAA Motor Club.  (Fass Aff. ¶ 25.)
Defendant also transferred over $50,000 from her personal bank
account to the HPLP business account during the period between
July 2012 and December 2013.  (Fass Aff. ¶ 23.)  Ms. Keehn also
testified at her deposition that defendant "put money" in HPLP
"over the years."  (Fass Aff. Exh C (Keehn Dep.) at 88-89.)  The
beginning balance in July 2012 was $10,322.96, the ending
balance in December 2013 was $2,611.93, and the highest balance
during this period was $32,855.91 on May 1, 2013.  (Fass Aff.
Exh. J.)  Ms. Keehn also testified that defendant transferred
cash out of HPLP to herself, and because HPLP is a Subchapter S
corporation, defendant is obligated to pay taxes on any profits.
(Fass Aff. Exh. C (Keehn Dep.) at 51-52.)

        Defendant, in her affidavit, avers that she has an
ongoing loan account with HPLP, which is used by defendant "to
cover HPLP's short falls and expenses that occur from time to
time."  (Moriarty Aff. ¶30.)  No documentation of this loan was
submitted.  At her deposition, Ms. Keehn was unable to clarify
whether transactions between defendant and HPLP, a category on
the general ledger titled "loans to/from Hey Pizza Lady," were
loans to Ms. Moriarty from HPLP or vice versa.  (Fass Aff. Exh.

C (Keehn Dep.) at 75-76 ("I think she owes Hey Pizza Lady that money . . . . No. I'm sorry. I think Hey Pizza Lady – I take it back. I think Hey Pizza Lady owed Cathy that money. But I'd really have to look. I honestly don't recall.") In response to plaintiff's counsel's request for clarification after the conclusion of her deposition, Ms. Keehn's explanation for loans and/or transfers between defendant and HPLP noted in the general ledger from 2008 to 2013 was that "[t]he transfers between accounts were made in order to cover expenses for items to be paid." (Fass Aff. Exh. G.)

## II. Discussion

### A. Rule 69(a) and CPLR § 5225(b)

Proceedings upon execution are governed by Rule 69(a) of the Federal Rules of Civil Procedure. Rule 69(a) provides in relevant part: "The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. Pr. 69(a)(1). Here, the relevant state law procedure is found in New York CPLR § 5225(b).[2] The statute provides, in relevant part:

---

[2] Defendant argues that the New York CPLR does not apply and that the court should apply California procedure instead. (Def.'s Mem. of Law in Opp. to Pl.'s Mot. ("Def.'s Opp.") ¶ 39, ECF No. 71.) Defendant's contention fails, because Rule 69(a) expressly provides that post-judgment enforcement procedures must accord with the procedure of the state where the court is located.

Property not in the possession of judgment debtor. Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

CPLR § 5225(b).

Most courts in this Circuit have held that parties may bring a motion pursuant to Rule 69(a) rather than instituting a special proceeding under New York state law. *See Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581-82 (S.D.N.Y. 2012); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849, 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2011); *Mitchell v. Lyons Prof'l Servs.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010); *but see Wasserman Media Grp., LLC v. Bender,* 10 Civ. 8783, 2012 WL 1506181, at 1-2 (S.D.N.Y. Apr. 26, 2012). Judge Cogan gave a thorough explication of this issue in *Mitchell*, and concluded that "[a] 'special proceeding' is a creature of New York practice that although brought as a distinct legal action, has more in common with motion practice than it does with a plenary action." *Mitchell*, 727 F. Supp. 2d at 122-23.

Moreover, the Second Circuit has stated the following in dicta:

> Under Connecticut practice, a separate action would be required in the nature of a scire facias against the alleged debtor or trustee of the judgment debtor, requiring a hearing and judgment separate from the original action. The procedure followed here, more in the nature of one supplementary to enforcement of a judgment, accords with the spirit of the Rules and seems to be a sufficiently close adherence to state procedures.

*Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 256 (2d Cir. 1963).

In any event, here, the parties have also consented to the disposition of their dispute regarding HPLP's liability by motion.[3]

B. <u>Jurisdiction</u>

The Second Circuit has drawn a distinction between "post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability," and fraudulent conveyance claims where the court may pursue assets of the judgment debtor in the hands of third-party under the court's ancillary enforcement jurisdiction. *Epperson v. Entm't Express, Inc.*, 242

---

[3] The court granted plaintiff's order to show cause for a hearing pursuant to Rule 69(a) and CPLR § 5225(b) to be held on August 28, 2014. (Order to Show Cause dated Aug. 22, 2014, ECF No. 66.) Pursuant to a stipulation by the parties, the hearing was adjourned to October 15, 2014. (Order dated Aug. 27, 2014.) After defendant requested another adjournment, the court held a telephonic conference, at which the parties consented to proceeding without a hearing and relying on their motion papers alone. (*See* Minute Entry dated Oct. 14, 2014.)

F.3d 100, 106 (2d Cir. 2001). Because the instant dispute concerns a claim of alter ego liability and not one of fraudulent conveyance, the court may not simply exercise ancillary enforcement jurisdiction over HPLP and must make a separate determination of whether it has jurisdiction over HPLP, a California corporation, before it proceeds to determine whether HPLP is liable under an alter ego theory of liability.[4]

In diversity cases such as this, a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over foreign defendants. *See Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement,* 326 U.S. 310 (1945); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). The Court will therefore look to New York law to determine whether it may exercise personal jurisdiction over HPLP.

Plaintiff asserts that HPLP is subject to both general and specific jurisdiction in New York. Pursuant to N.Y. C.P.L.R. § 301, a party is subject to general jurisdiction if it is domiciled in New York, served with process in New York, or continuously and systematically does business in New York. *See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 565

---

[4] As discussed *infra*, the court finds that HPLP is an alter ego of defendant, which is an alternate basis for jurisdiction over HPLP. *Transfield ER Cape Ltd v. Indus. Carriers, Inc.*, 571 F.3d 221, 223-4 (2d Cir. 2009)("[I]n general, alter egos are treated as one entity for jurisdictional purposes.")(internal quotation marks and citation omitted).

10

N.E.2d 488 (N.Y. 1990); *Pichardo v. Zayas,* 122 A.D.3d 699, 702, 996 N.Y.S.2d 176, 180 (N.Y. App. Div. 2014); *see also Wells Fargo Bank Minnesota, N.A. v. ComputerTraining.Com, Inc.,* No. 04-Cv-0982, 2004 WL 1555110, at *2-3 (S.D.N.Y. July 9, 2004). In *Daimler AG v. Bauman*, ---U.S.---, 134 S. Ct. 746, 761 (2014), the Supreme Court held that the test for whether a court has general jurisdiction over a foreign corporation is whether the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." (*quoting Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. ---, 131 S. Ct. 2846 (2011)). "Aside from 'an exceptional case,' the Court explained, a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122, 135 (2d Cir. 2014)(quoting *Daimler*, 134 S. Ct. at 761 & n.19). Because the court finds that it has specific jurisdiction over HPLP, it need not decide whether it has general jurisdiction over HPLP.

    With regard to specific jurisdiction, a foreign corporation may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if it engages in the following acts either directly or through an agent and such acts relate or give rise to an asserted claim: (1) transacts any business within the

11

state or contracts anywhere to supply goods or services in the
state; (2) commits a tortious act within the state; (3) commits
a tortious act outside the state but injures a person or
property in the state; or (4) owns, uses, or possesses any real
property in the state.  N.Y. C.P.L.R. § 302(a).  Plaintiff
argues that HPLP is subject to specific jurisdiction in New
York, because it transacts business within the state of New York
and the cause of action arises out of these contacts.  (Pl.'s
Mem. in Support of Rule 69(a) Mot. at 4, ECF No. 64-14.)

        "Whether a non-domiciliary is transacting business
within the meaning of CPLR 302(a)(1) is a fact based
determination, and requires a finding that the non-domiciliary's
activities were purposeful and established a substantial
relationship between the transaction and the claim asserted."
*Paterno v. Laser Spine Inst.*, 23 N.E.3d 988 (N.Y. 2014)(internal
quotation and citation omitted).  "Purposeful activities are
volitional acts by which the non-domiciliary 'avails itself of
the privilege of conducting activities within the forum State,
thus invoking the benefits and protections of its laws.'"  *Id.*
(quoting *Fischbarg v. Doucet,* 880 N.E.2d 22 (N.Y. 2007)).  "More
than limited contacts are required for purposeful activities
sufficient to establish that the non-domiciliary transacted
business in New York."  *Paterno,* 24 N.Y.3d at 376, 998 N.Y.S.2d
720.  New York case law makes clear that "it is the quality of

the defendants' New York contacts that is the primary consideration" in a § 302(a)(1) analysis. *Fischbarg,* 880 N.E.2d at 26-27; *see also Royalty Network Inc. v. Dishant.com, LLC,* 638 F. Supp. 2d 410, 417–18 (S.D.N.Y. 2009).

Here, the facts are sufficient to establish personal jurisdiction over HPLP pursuant to CPLR § 302(a)(1). Defendant, the sole shareholder of HPLP, who is also the primary employee of HPLP, resides in New York. Defendant contracts for acting work in New York and elsewhere through HPLP, and HPLP is the conduit through which payments for such work and any distributions are channeled to defendant in New York. HPLP's bank records establish that more than $125,000 flowed to New York via cash transfers, ATM withdrawals by defendant, and payment of defendant's cable bills. For an account with a balance that typically hovered around $10,000 and never exceeded $35,000 between July 2012 and December 2013, the over $125,000 that flowed to New York is a substantial proportion of HPLP's transactions. These transfers from HPLP to defendant in New York are also evidence in support of a finding that HPLP is an alter ego of defendant. Additionally, defendant does not dispute that she has performed work in New York as an employee of HPLP, including, *inter alia*, acting in the film, *Once Upon a Time in Brooklyn,* and episodes of the television show, *Law & Order*, both of which were filmed in New York. (Fass Aff. ¶ 8.)

13

Here, HPLP's transfers are purposeful, have a substantial
relationship to plaintiff's claim that HPLP is an alter ego of
defendant, and are significant, not limited, contacts with New
York. Consequently, the court finds that it has personal
jurisdiction over HPLP pursuant to CPLR § 302(a)(1). *See, e.g.*,
*Tianbo Huang v. iTV Media, Inc.*, 13 F. Supp. 3d 246, 255
(E.D.N.Y. 2014)(finding personal jurisdiction over non-
domiciliary on the grounds that, *inter alia*, non-domiciliary
transferred substantial funds to an entity in New York and paid
plaintiff's salary for work in New York).

Having concluded that the court may exercise specific
jurisdiction over HPLP pursuant to CPLR § 302(a)(1), the court
must next determine whether the exercise of jurisdiction
comports with the Due Process Clause of the Fourteenth
Amendment, which requires "some act by which the defendant
purposefully avails itself of the privilege of conducting
activities within the forum State, thus invoking the benefits
and protections of its laws." *Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 475 (1985); *see also World-Wide Volkswagen Corp.*
*v. Woodson,* 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct
and connection with the forum state [must be] such that he
should reasonably anticipate being haled into court there.").
There are two aspects of the due process analysis: (1) the
minimum contacts inquiry, and (2) the reasonableness inquiry.

*Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 171 (2d Cir. 2010).

"Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co. v. Gerrit J. Verburg Co.,* 961 F. Supp. 88, 90 (S.D.N.Y. 1997). For the reasons summarized above, HPLP had sufficient minimum contacts with New York that satisfy due process: defendant, the sole owner and an employee of HPLP, resides in New York; HPLP is the entity that contracts for the New York defendant's acting roles and lends out defendant's acting services, receives payment for defendant's services and manages defendant's accounts; HPLP transferred substantial funds to New York, whether to defendant directly or to pay her cable and other bills in New York; and defendant, as an employee of HPLP, performed work in New York. *See Chloe,* 616 F.3d at 171 (concluding that "assertion of personal jurisdiction over [defendant] comports with due process for the same reasons that it satisfies New York's long-arm statute").

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed himself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus

reasonable under the Due Process Clause." *Id.* at 172–73
(quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.,
Solano Cnty.,* 480 U.S. 102, 113 (1987)).  As set forth by the
Supreme Court, courts should consider five factors when
determining the reasonableness of a particular exercise of
jurisdiction.  A court must consider (1) the burden on the
defendant; (2) the interests of the forum state; (3) the
plaintiff's interest in obtaining relief; (4) the interstate
judicial system's interest in obtaining the most efficient
resolution of controversies; and (5) the shared interest of the
several states in furthering fundamental substantive social
policies. *See Asahi Metal Indus.,* 480 U.S. at 113.  "Where the
other elements for jurisdiction have been met, dismissals on
reasonableness grounds should be 'few and far between.'" *Gucci
Am., Inc. v. Frontline Processing Corp.,* 721 F. Supp. 2d 228,
246 (S.D.N.Y. 2010) (quoting *Metro. Life Ins. Co. v. Robertson-
Ceco Corp.,* 84 F.3d 560, 575 (2d Cir. 1996)).

     Considering the first factor, the burden upon HPLP of
defending itself in New York appears to be minimal, because
based on the jurisdictional arguments made by defendant's
counsel, it appears that defendant's counsel is also
representing HPLP, and defendant, HPLP's sole owner and primary
employee resides in New York.  The second and third factors
involving the interests of the forum state and the plaintiff

favors the exercise of jurisdiction, because although plaintiff is not a New York corporation, New York has an interest in the enforcement of its judgments involving loans to its residents and an interest in the funds that are earned by and transferred to residents of the state. The court finds that the fourth factor weighs in favor of exercising jurisdiction, given that this litigation was started over five years ago and the court is familiar with the record. The court finds that the fifth factor is neutral. After considering the reasonableness factors, the court finds that the exercise of its jurisdiction over HPLP does not offend traditional notions of fair play and substantial justice and is thus reasonable under the Due Process Clause.

C. Alter Ego Liability

The parties do not dispute that California law applies to determining whether HPLP, a California corporation, is subject to alter ego liability. (*See* Pl.'s Mem. at 12-15; Def.'s Opp. at 7-8); *see also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)("[U]nder New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded . . . .")(internal quotations and citation omitted). Pursuant to California law, to establish an alter-ego theory of liability, a plaintiff must show "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the said person and

17

corporation has ceased, and (2) an adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *Sec. Exch. Comm'n v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). The plaintiff bears the burden of proof. *See Wady v. Provident Life & Accident Ins. Co. of America*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002)(citing *Minifie v. Rowley*, 202 F. 673 (Cal. 1921)).

When assessing whether there is unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist for the purposes of piercing the corporate veil under alter ego liability, courts consider, among other factors:

> the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation.

*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d
1095, 1106-07 (N.D. Cal. 2015)(citations omitted). This list of
factors is not exhaustive. *See Zoran Corp. v. Chen*, 185 Cal.
App. 4th 799, 811-812, 110 Cal. Rptr. 3d 597, 606-07 (Cal. Ct.
App. 2010). "No single factor is determinative, and instead a
court must examine all the circumstances to determine whether to
apply the doctrine." *Id*. (citation omitted.) The court
considers the factors in turn.

### 1. Unity of Interest

a. Commingling of funds; failure to segregate
funds; unauthorized diversion of corporate
funds; treatment by an individual of corporate
asserts as her own; the use of the corporation
as a mere conduit for the individual's
business; disregard of corporate formalities
and failure to maintain arm's-length
transactions with the corporation

These six factors all weigh in favor of a finding that
there is a unity of interest and ownership between HPLP and
defendant that the separate personalities of HPLP and defendant
no longer exist. For the period between July 2012 and December
2013, defendant withdrew $43,803.00 via ATM cash withdrawals
directly from the HPLP corporate bank account. Cash transfers
from the HPLP corporate account to defendant's personal account
totaled $79,611.00, and defendant also transferred over $50,000
from her personal bank account to the HPLP business account
during this period. The only explanation that was provided for

the continuous and frequent transfers of funds was that defendant had an ongoing loan account with HPLP. However, Ms. Keehn, at her deposition, was unable to differentiate from her review of the general ledger whether the purported loan was to or from defendant, to or from HPLP, much less provide any explanation or documentation for the loan, or the expenses the loan was intended to cover. The HPLP corporate bank account was also used to pay for defendant's personal cable bill and her membership in the AAA Motor Club. The evidence shows that defendant treated the HPLP bank account as her own, diverted funds to pay her personal bills, commingled and failed to segregate funds, used HPLP as a conduit for defendant's acting business, and failed to maintain arm's-length transactions with HPLP by making continuous and frequent transfers between the HPLP bank account and her personal account with no explanation for such transfers.

b. <u>Failure to obtain authority to issue stock or to issue stock under existing authorization</u>

There is no evidence that HPLP issued any stock. Although plaintiff bears the burden of proof, the court notes that defendant and Ms. Keehn have provided very few corporate documents related to HPLP. The court considers this factor to be neutral.

c. <u>The representation by an individual that she is personally liable for corporate debts; the concealment of the ownership of the corporation; attempts to segregate liabilities of the corporation</u>

The parties did not present the court with any evidence as to whether defendant represented that she is personally liable for corporate debts (although defendant does claim that she loaned money to HPLP), whether defendant concealed ownership of the corporation, or whether there were any attempts to segregate liabilities of the corporation.  The court finds that the lack of evidence of these facts weighs slightly against a finding of unity of interest.

d. <u>The failure to maintain adequate corporate minutes or records; intermingling of the corporate minutes or records</u>

Defendant and Ms. Keehn, the business manager of HPLP, have failed to maintain adequate corporate minutes and records. HPLP has produced no corporate bylaws, minutes, loan documents, nor any itemization of the transfer of funds between HPLP and defendant.  Thus, the court finds this factor weighs in favor of a finding of unity of interest.

e. <u>The ownership of all the stock by a single individual</u>

Defendant is the sole shareholder and owner of HPLP. The court finds this factor tilts toward a unity of interest notwithstanding the context of a loan-out corporation, where the

owner is typically the performer-employee who performs the work and earns income for the corporation. *See* Lind and Hamzeh, *Use of Loan-Out Corps. in the Entertainm't Indus.*, 17 No. 12 Andrews Ent. Indus. Litig. Rep. 2 (Jan. 2006)(The benefit of the corporate form exists "even though a single shareholder owns the entire stock of a corporation, as is generally the rule with a loan-out corporation in the entertainment industry.").

> f. Domination or control of the corporation by the stockholder

In her affidavit, defendant states in a conclusory fashion that Ms. Keehn had exclusive control over HPLP and its bank accounts, which is contradicted by Ms. Keehn's deposition testimony that defendant directed her to make payments and transfer money to defendant's personal account. As an initial matter, the court does not find defendant's statement that Ms. Keehn had exclusive control over HPLP's bank account to be credible in light of the fact that defendant is a self-interested party in this action and defendant's statement is contradicted by Ms. Keehn's testimony. Based on the limited evidence presented, the court finds that this factor weighs slightly in favor of a finding of unity of interest.

> g. Inadequacy of the corporation's capitalization

The parties do not dispute that HPLP had no assets. Adequacy of capitalization "must be measured against the

business to be done." *Bank of Montreal v. SK Foods, LLC*, 476
B.R. 588, 598 (N.D. Cal. 2012) *aff'd sub nom. Bank of Montreal
v. Salyer*, 599 F. App'x 706 (9th Cir. 2015)(internal quotation
marks and citation omitted).  Although HPLP's lack of assets
raises an initial red flag, measured against its "business to be
done," that of loaning out defendant to perform in television
and film productions, the court finds that the lack of
capitalization is reasonable and thus considers this factor to
be neutral.

### h. Use of a single address

HPLP and defendant do not share a single address or
office, and the court thus considers this factor to weigh
against a finding of unity of interest.

### i. Other Factors

The court also considers the fact that defendant
transferred assets away from HPLP during the pendency of this
case and after judgment was entered.  *Bank of Montreal*, 476 B.R.
at 600 ("[T]he knowing transfer of assets away from potential
liabilities does raise concerns" and "weigh[s] heavily in favor
of an alter ego finding.")  This action was commenced in 2010
and judgment was entered on February 21, 2013.  That defendant,
through a combination of bank transfers and ATM withdrawals,
transferred over $123,000 from the HPLP bank account to her own
personal account weighs heavily in favor of a unity of interest

23

finding.

Additionally, the court considers that HPLP and defendant are represented by the same counsel, which weighs in favor of a finding of unity of interest. *See Zoran Corp.*, 185 Cal. App. 4th at 811 (listing "the employment of the same employees and/or attorney" as a factor for determining unity of interest).

Considering all the factors discussed above, the court finds that HPLP shares a unity of interest with defendant.

**2. Inequitable Result**

The alter ego test's second requirement is that "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud" or "work an injustice to a third person." *Associated Vendors Inc. v. Oakland Meat Co.,* 210 Cal. App. 2d 825, 837, 26 Cal. Rptr. 806 (Cal. Ct. App. 1962); *Katzir's Floor & Home Design, Inc. v. M-MLS.com,* 394 F.3d 1143, 1149 (9th Cir. 1999)(citation omitted)(emphasis removed). "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Id.* "Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." *Sonora Diamond Corp. v. Superior Court,* 83 Cal. App. 4th 523, 539, 99 Cal. Rptr. 2d 824 (Cal. 2000). Critical facts

such as "inadequate capitalization, commingling of assets, [and] disregard of corporate formalities" may establish that an inequitable result would result if the court finds that corporate separateness is enforceable. *Katzir's Floor & Home Design*, 394 F.3d at 1149 (citing *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433, 443 (Cal. Ct. App. 1994).

Here, as discussed in the court's analysis of the unity of interest prong of the alter ego test, the court finds that the assets of HPLP and defendant were commingled and that corporate formalities were disregarded. Additionally, the transfer of funds from the HPLP bank account to defendant's personal account during the pendency of this action and after judgment was entered against defendant constitutes a badge of fraud. Here, adherence to the fiction of the separate existence of HPLP would sanction a fraud and work an injustice to the plaintiff in this action, who has obtained judgment against defendant. *See Bank of Montreal*, 476 B.R. at 600 (finding inequitable result when plaintiff's legal interest would have been conveyed to other entities if veil was not pierced). Consequently, the court finds that HPLP is an alter ego of defendant.

## CONCLUSION

Plaintiff's motion to hold third-party Hey Pizza Lady

Productions, Inc. liable as an alter ego of defendant Cathy

Moriarty-Gentile a/k/a Catherine Moriarty pursuant to Rule 69(a)

and CPLR § 5225(b) is hereby GRANTED.  The Clerk of the court is

directed to enter judgment against Hey Pizza Lady Productions,

Inc. in accordance with this Memorandum and Order.

**SO ORDERED.**


Dated:     December 10, 2015
           Brooklyn, New York

                              _____/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge
                              Eastern District of New York