```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
FIRST HORIZON BANK, a division of
First Tennessee Bank,
                                          MEMORANDUM AND ORDER
               Plaintiff,
                                          10-CV-00289 (KAM)(RER)

         -against-

CATHY MORIARTY-GENTILE *a/k/a.*
CATHERINE MORIARTY,


               Defendant.
----------------------------------X
```

**MATSUMOTO, United States District Judge:**

On March 18, 2016, plaintiff First Horizon Bank ("plaintiff") filed an application for an order to show cause for third-party Richard Palmer ("Palmer"), a California resident, to appear before this court and show cause why an order should not be entered pursuant to Federal Rule of Civil Procedure 69(a) ("Rule 69(a)"), New York Civil Practice Law and Rule ("C.P.L.R.") §§ 5225 and 5227, and New York Debtor and Creditor Law ("DCL") §§ 273-a, 274, 273 and 276, imposing liability for the full judgment entered against defendant Cathy Moriarty-Gentile a/k/a Catherine Moriarty ("defendant" or "Moriarty-Gentile") against Palmer on fraudulent transfer grounds. (Unsigned Order to Show Cause, ECF No. 91). For the reasons stated herein, the court finds that the exercise of personal jurisdiction over Palmer is proper and consistent with

due process.[1]

### **Background[2]**

On January 22, 2010, plaintiff commenced this action against Moriarty-Gentile for a default on a home equity line of credit. (ECF No. 1). On February 21, 2013, plaintiff obtained a monetary judgment against defendant Moriarty-Gentile in the amount of $759,347.05. (Clerk's Judgment, ECF No. 48). After being unable to collect on this judgment, plaintiff instituted post-judgment proceedings pursuant to Fed. R. Civ. P. 69; the parties then engaged in substantial post-judgment discovery. (Unsigned Order to Show Cause, ECF No. 64).

In connection with post-judgment proceedings, plaintiff deposed Moriarty-Gentile on October 1, 2013 and Jackie Keehn ("Keehn"), a California-based certified public accountant who provided accounting services for Moriarty-Gentile, Palmer, and Mulberry Street Pizzeria on December 17, 2013. (Affidavit of Daniel A. Fass ("Fass") Exhibit ("Exh.") C (Deposition of Cathy Moriarty-Gentile ("Moriarty-Gentile Dep.")), ECF No. 91-4; Fass Exh. E (Deposition of Jackie Keehn) ("Keehn Dep."), ECF No. 91-6

---

[1] The court reserves judgment on the merits of the fraudulent transfer claim until it receives additional submissions from the parties.

[2] The court assumes familiarity with the procedural history and factual background of the case, which is summarized in numerous orders. Consequently, the court limits its factual summary to those facts pertinent to evaluating whether the exercise of personal jurisdiction over Palmer is proper.

at 8-10, 25). During the Moriarty-Gentile and Keehn depositions in October and December 2013, plaintiff learned that Moriarty-Gentile sold her interest in Mulberry Street Pizzeria to Palmer in November 2010, pursuant to a Stock Sale Agreement (the "Stock Sale Agreement" or the "Transfer"). (Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 26-27; Fass Exh. E, Keehn Dep., ECF No. 91-6 at 36). Further, Moriarty-Gentile testified that at the time of the November 2010 Stock Transfer, she was "struggling" financially. (Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 27).

On March 6, 2015 plaintiff deposed Palmer. (Fass Exh. G (Deposition of Richard Palmer ("Palmer Dep.")), ECF No. 91-8). Palmer testified that he was an experienced restauranteur and he understood that he was a 50% owner of Mulberry Street Pizzeria, a California entity, prior to the execution of the Stock Sale Agreement. Palmer further admitted that he later learned that Moriarty-Gentile was actually the sole officer, director and shareholder of Mulberry Street Pizzeria. (*Id.* at 10-11, 18-19, 34). Mulberry Street Pizzeria is a restaurant business which, in 2010, had three locations in Los Angeles. (*Id.* at 35). In 2010, Mulberry Street Pizzeria had gross revenues in excess of two million dollars and net income of about $150,000. (Fass Exh. O, Mulberry Street Pizzeria 2010 Federal Tax Return, ECF No. 91-16 at 1). Mulberry Street Pizzeria's 2010 federal tax return stated

3

that Moriarty-Gentile was an 85.48% shareholder, and Richard Palmer was a 14.52% shareholder. (*Id.* at 5, 7). Mulberry Street Pizzeria had similar gross and net incomes in 2008 and 2009. Its 2008 and 2009 federal tax returns listed Moriarty-Gentile as the 100% shareholder. (Fass Exhs. P and Q, Mulberry Street Pizzeria 2009 and 2008 Federal Tax Returns, ECF Nos. 91-17 and 91-18 at 1, 5).

Palmer testified during his deposition that in 2010, 5% of Mulberry Street Pizzeria was worth much more than $5,000, and that based upon his experience in the restaurant business, a reasonable valuation of an on-going restaurant business was at least one times gross revenue. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 51-52, 95-96). Palmer also testified that he was aware of Moriarty-Gentile's financial difficulties, specifically acknowledging that around the time of the Transfer he "was getting calls from banks" about Moriarty-Gentile and "the government was after her." (*Id.* at 59, 70). Palmer's plan in 2010 was to loan Moriarty-Gentile money against her interest in Mulberry Street Pizzeria knowing that she would not pay the money back, thereby allowing him to obtain her shares and take control of Mulberry Street Pizzeria. (*Id.* at 50).

On March 18, 2016, plaintiff filed an application for an order to show cause as to third-party Palmer, a California resident, to appear before this court and show cause why an order

should not be entered finding him liable for the full judgment entered against defendant Moriarty-Gentile. (Unsigned Order to Show Cause, ECF No. 91). On May 3, 2016, the court granted plaintiff's application for an order to show cause. (Order to Show Cause, ECF No. 95). After experiencing difficulty serving Palmer, plaintiff sought additional time to effect service. (Letter Requesting Additional Time to Serve Order to Show Cause, ECF No. 96). The court granted plaintiff's request and issued the Amended Order to Show Cause on May 24, 2016. (Amended Order to Show Cause, ECF No. 97). Palmer was served on June 6, 2016. (Affidavit of Service for Order to Show Cause, ECF No. 98). After seeking and receiving an extension, Palmer, on July 29, 2016, opposed plaintiff's motion on personal jurisdiction grounds but did not otherwise oppose on the merits. (Memorandum in Opposition to the Amended Order to Show Cause, ECF No. 101). Plaintiff filed its reply on August 15, 2016. (Reply Brief, ECF No. 102). On August 18, 2016 the Show Cause Hearing was held; the court heard arguments on personal jurisdiction. The court also set a schedule for additional briefing relating to the valuation of the Mulberry Street Pizzeria. (Minute Entry dated 08/18/2016). On October 3, 2016 Palmer filed its opposition addressing plaintiff's fraudulent transfer allegations. (Memorandum in Further Opposition, ECF No. 105). Plaintiff has yet to file its response to Palmer's opposition.

**Discussion**

For the reasons explained below, this court finds that exercising personal jurisdiction over Palmer is proper under the New York Long Arm Statute, C.P.L.R. 302(a)(3)(ii), and comports with due process notions of fair play and substantial justice.

I.  The Long Arm Statute

In diversity cases such as this, a district court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over foreign defendants. *See Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement,* 326 U.S. 310 (1945); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999). The court will, therefore, look to New York law to determine whether it may exercise personal jurisdiction over Palmer. With regard to specific jurisdiction, a non-domiciliary may be subject to New York's long-arm statute, C.P.L.R. § 302(a)(3)(ii), if that person "commits a tortious act without the state causing injury to person or property within the state" and who "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3)(ii).

Here, plaintiff alleges sufficient facts to establish personal jurisdiction over Palmer pursuant to C.P.L.R § 302(a)(3)(ii). Plaintiff alleges that the transfer of Moriarty-

Gentile's interest in Mulberry Street Pizzeria to Palmer was a fraudulent conveyance. Under New York law, a fraudulent conveyance is a species of tort. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980); *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1273 (S.D.N.Y. 1991) (denying motion to dismiss for lack of personal jurisdiction because plaintiff, in part, stated a claim for fraudulent conveyance). A transfer is deemed constructively fraudulent pursuant to Debtor Creditor Law ("DCL") § 273 if (1) the transfer was made without fair consideration, and (2) the transferor was insolvent or was rendered insolvent by the transfer. *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.,* 871 F. Supp. 2d 103, 120 (E.D.N.Y. 2012). Under DCL § 271(a) "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

The court finds that plaintiff has established a *prima facie*[3] case of fraudulent conveyance. Moriarty-Gentile transferred 50% of her interest in Mulberry Street Pizzeria to Palmer on November 9, 2010 for $75,000. (Fass Exh. F, Stock Sale Agreement, ECF No. 91-7 at 1-2). Based on his 26 years in the California restaurant industry, Palmer testified that a viable restaurant in

---

[3] Plaintiff only needs to make a prima facie showing of fraudulent conveyance at this juncture. *See Phillips v. Reed Group, Ltd.*, 955 F. Supp. 2d 201, 225 (S.D.N.Y. 2013).

7

the Los Angeles area would typically be worth at least one times gross revenue. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 18, 95-96). Mulberry Street Pizzeria which, at the time, owned three pizza restaurants, had gross receipts in excess of $2,000,000 with positive income of about $150,000 in 2010, the year the Transfer occurred, and over $2,000,000 in gross receipts and over $150,000 and $200,000 in positive income respectively in 2008 and 2009. (Fass Exhs. O, P and Q Mulberry Street Pizzeria 2008, 2009 and 2010 Federal Tax Returns, ECF Nos. 91-16 at 1, 91-17 at 1 and 91-18 at 1). Further, Palmer testified at his deposition that in 2010, his plan was to lend Moriarty-Gentile money, knowing that she could not and would not pay him back, so he could take all of her stock and gain control of Mulberry Pizzeria in satisfaction of the debt. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 48, 50). Defendant testified during her deposition that she was "struggling" financially at the time of the Transfer. (Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 27). Based on the foregoing, plaintiff has proffered evidence showing that the transfer was made without fair consideration and that Moriarty-Gentile was either insolvent or became insolvent because of the transfer. Thus, the court finds that this evidence is sufficient to make a *prima facie* showing of fraudulent conveyance.

The court also finds that the Transfer occurred outside of New York. Moriarty-Gentile was a New York resident at the time

of the Transfer in November 2010. (Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 4, 28; Letter Motion for a Settlement Conference by Moriarty-Gentile, ECF No. 20 at 1). Mulberry Street Pizzeria is a restaurant business that operated three restaurants in Los Angeles, California area, and Palmer is a California resident. (Palmer Dep., ECF No. 91-8 at 18). Second, some of the loan agreements that were purportedly a part of the consideration for Moriarty-Gentile's shares were drafted by Keehn, the accountant for defendant, Palmer and Mulberry Street Pizzeria, who operates her accounting business in the Los Angeles area; Palmer's attorney, whose law practice is in California, "handled" the Transfer. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 25, 28, 57; Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 27; Fass Exh. E, Keehn Dep., ECF No. 91-6 at 8-11, 45-46; Fass Exh. H, Complaint for Partnership Dissolution, ECF No. 91-9 at 1). Further, Moriarty-Gentile testified that she has not visited California in 12 to 13 years. (Fass Exh. C, Moriarty-Gentile Dep., ECF No. 91-4 at 28). Thus, the court concludes that the November 2010 Transfer constitutes a tortious act outside the state of New York and caused injury to the First Horizon Bank *within* New York because First Horizon Bank had been actively litigating against Moriarty-Gentile to collect a debt for ten months, and would have difficulty reaching Moriarty-Gentile's interest in Mulberry Street Pizzeria to enforce the monetary judgment that was expected to be entered

against Moriarty-Gentile in New York. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590(LTS)(HBP), 2014 WL 3883371, at *6 (S.D.N.Y. Aug. 7, 2014).

First Horizon Bank has established that Palmer should have "reasonably expected" his actions to have consequences within New York State and that Palmer derives substantial revenue from interstate or international commerce. C.P.L.R. 302(a)(3)(ii). In *Universitas Educ.*, the district court located the situs of injury in New York "because the fraudulent conveyances impeded Petitioner's ability to enforce its New York judgment." 2014 WL 3883371, at *6. The respondents' agent initiated the conveyances with the knowledge that the petitioner "was asserting a right to the proceeds of the insurance policies and was considering litigation." *Id.* Even though the fraudulent conveyance took place in Connecticut, the court asserted personal jurisdiction over the respondents because the respondents should have reasonably expected their actions to cause an injury in New York. *Id.*

Similar to the fraudulent conveyance in *Universitas Educ.*, the transfer of stock by Moriarty-Gentile to Palmer took place after First Horizon Bank commenced its collection action against defendant Moriarty-Gentile and after Palmer had received calls from banks regarding the defendant, including a "Tennessee Bank" that appears to be the plaintiff. 2014 WL 3883371, at *6; (Pl. Mem. at 2; Fass Exh. G, Palmer Dep., ECF No. 91-8 at 59-60).

10

Palmer testified that he loaned Moriarty-Gentile $10,000 cash in approximately August 2010 by giving it to their accountant Keehn because he knew that defendant's account had been garnished. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 70). Further, Palmer an experienced restauranteur testified that a reasonable valuation of a viable restaurant in the Los Angeles area is one times gross revenues and yet Palmer bought defendant's 50% interest in Mulberry Street Pizza for $75,000, when annual gross revenues had been over $2,000,000 for 2008, 2009 and 2010. At the time of the transfer of defendant's Mulberry Street Pizzeria shares to Palmer, Palmer knew that Moriarty-Gentile, a New York domiciliary, was struggling financially and, therefore, Palmer should have "reasonably expect[ed]" that Moriarty-Gentile's transfer of her interest in Mulberry Street Pizzeria could affect her creditor's ability to collect on her debts in New York. In July 2010, Palmer had received calls from banks at one of the Mulberry Street Pizzeria locations. (Fass Exh. G, Palmer Dep., ECF No. 91-8 at 59); *see Sunrise Indus. Joint Venture v. Ditric Optics, Inc.*, 873 F. Supp. 765, 768, 771 (E.D.N.Y. 1995) (finding that jurisdiction was proper under section 302(a)(3)(ii) because party could have reasonably expected the transfer to have consequences in New York where they sold all or most of the debtors assets in New York for less than fair value, leaving the debtor insolvent).

The court finds that Palmer, through his ownership of

Mulberry Street Pizzeria, engages in interstate commerce. The pizzerias are located in Los Angeles, a major international city. Mulberry Street Pizzeria is not the "purely local" type of business that the Long Arm Statute was not intended to reach. Two of the restaurants are located in Beverly Hills, a famous area that is frequented by tourists. "The provision of services to interstate customers is sufficient to show that the services were rendered in commerce." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 268 (2d Cir. 2011)(affirming district court's finding that Patsy's Pizzeria was engaged in interstate commerce where "people came from all over to go there" and maps showed that the restaurant was located near several interstate highways and several articles were written about the restaurant). Moreover, it is well settled that restaurants, even ones local in nature, are "merely an element of a much broader commercial market of food and drink delivery" that is connected to interstate commerce. *United States v. Joyner*, 201 F.3d 61, 79 (2d Cir. 2000); *see also United States v. Iodice*, 525 F.3d 179, 183 (2d Cir. 2008) ("[B]oth restaurants and bars have the requisite relationship to interstate commerce. . . ."). Thus, the court finds that Palmer, through his ownership and management of Mulberry Street Pizzeria, is engaged in interstate commerce and therefore, the court has a statutory basis under New York's C.P.L.R. § 302(a)(3)(ii) to assert "long-arm" jurisdiction over Palmer.

II. Due Process

Having concluded that the court may exercise specific jurisdiction over Palmer pursuant to C.P.L.R. § 302(a)(3)(ii), the court must next determine whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, which requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985); *see also World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there."). There are two aspects of the due process analysis: "(1) the minimum contacts inquiry and (2) the reasonableness inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 171 (2d Cir. 2010). "Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Topps Co., Inc. v. Gerrit J. Verburg Co.,* 961 F. Supp. 88, 90 (S.D.N.Y. 1997).

Palmer "purposely availed" himself of doing business with a New York resident when he continued to operate the Mulberry Street Pizzeria restaurants, extended loans and entered into the Stock Sale Agreement with Moriarty-Gentile, a New York

13

domiciliary. At the time of the Transfer, Palmer knew that Moriarty-Gentile was in debt and was unable to repay creditors since he had received phone calls from banks and was aware of a garnishment of defendant's account by a creditor. Moreover, the plaintiff had already commenced its collection action against Moriarty-Gentile for a $553,144.52 debt obligation. (Complaint, ECF No. 1 at ¶ 8). Palmer was aware of Moriarty-Gentile's poor financial condition, and he should have "reasonably expected" that the conveyance of her interest in Mulberry Street Pizzeria would prevent her creditors, including First Horizon Bank, from collecting on defendant's debts. Thus, First Horizon Bank's claim against Palmer "arises out of, or relates to" the thwarting of Moriarty-Gentile's creditors through her conveyance of her interest in the Mulberry Street Pizzeria. Consequently, he should have "reasonably expect[ed]" being "haled" into New York state court after planning to obtain her valuable interest in the Mulberry Street Pizzeria. *See Bank Brussels Lambert*, 305 F.3d at 128.

With respect to the reasonableness inquiry, even where an out-of-state defendant is deemed to have purposefully availed himself of the forum state, a plaintiff "must still demonstrate that the exercise of jurisdiction does not 'offend traditional notions of fair play and substantial justice' and is thus reasonable under the Due Process Clause." *Chloe,* 616 F.3d at 172-

73 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). As prescribed by the Supreme Court, courts should consider five factors when determining the reasonableness of a particular exercise of personal jurisdiction. A court must consider (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Indus.*, 480 U.S. at 113. "Where the other elements for jurisdiction have been met, dismissals on reasonableness grounds should be 'few and far between.'" *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 246 (S.D.N.Y. 2010) (quoting *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 575 (2d Cir. 1996)).

Considering the first factor, the burden upon Palmer of defending himself in New York does not appear to be overly burdensome. Although Palmer is not a New York resident, the conveniences of modern communication (*e.g.*, video conferencing) and transportation lessen that burden substantially. *See Bank Brussels Lambert*, 305 F.3d at 129-30 (finding the conveniences of modern communication and transportation lessen the burden of litigating in a relatively distant forum). In fact, Plaintiff

15

deposed Palmer via Skype, a video conferencing service. (Memorandum of Law in Support of First Horizon Bank's Motion to Enforce Judgment, ECF No. 92 at 7). The second and third factors, involving the interests of the forum state in obtaining the most efficient resolution of controversies and the plaintiff's interest in obtaining relief, favor the exercise of jurisdiction because although plaintiff is not a New York corporation, New York has an interest in enforcing its judgments in favor of lenders willing to extend loans to New York residents, and plaintiff has an interest in obtaining relief by enforcing the judgment it obtained from a New York resident. The court finds that the fourth factor, the interstate judicial system's interest in the most efficient resolution of controversies, weighs in favor of exercising personal jurisdiction, given that this litigation began over five years ago in this court, making this court particularly familiar with the record. The court finds that the fifth factor, the shared interests of the states in furthering social policies, is neutral. After considering the reasonableness factors, the court finds that the exercise of personal jurisdiction over Palmer does not offend traditional notions of fair play and substantial justice and, is therefore reasonable under the Due Process Clause.

## CONCLUSION

The court finds that exercising personal jurisdiction over Richard Palmer is appropriate and that plaintiff may proceed with the enforcement of its judgment.

**SO ORDERED.**

Dated:   November 3, 2016
         Brooklyn, New York

                                              _____/s/_____
                                              Kiyo A. Matsumoto
                                              United States District Judge
                                              Eastern District of New York